**FILED**
**SEPTEMBER 10, 2009**
KAREN S. MITCHELL
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| FRANK HERNANDEZ, JR. | § | |
| a/k/a/ FRANK GARCIA HERNANDEZ, JR. | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:06-CV-92 |
| | § | |
| NATHANIEL QUARTERMAN, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## REPORT AND RECOMMENDATION TO
## DENY PETITION FOR WRIT OF HABEAS CORPUS

Petitioner FRANK GARCIA HERNANDEZ, JR. has filed two Petitions for Writs of Habeas Corpus by a Person in State Custody challenging two convictions out of the Forty-Seventh District Court of Potter County, Texas. The first petition challenged a 2004 conviction for robbery and the resulting five-year sentence. The second petition challenged a 1983 conviction for the offense of unauthorized use of a motor vehicle (UUMV) and the resulting twenty-five-year sentence. Petitioner challenged these two convictions in separate federal habeas corpus petitions, cause numbers 2:06-CV-92 and 2:08-CV-63, which have been consolidated. *See* FED. R. CIV. P. 42(a). For the reasons set forth below, it is the opinion of the undersigned United States Magistrate judge that petitioner's applications for habeas corpus relief should be DENIED.

I.
PROCEDURAL BACKGROUND

On September 20, 1983, a jury convicted petitioner of UUMV and sentenced him to a twenty-five-year term of incarceration. After serving almost four years, petitioner was released on parole. He remained on parole for over sixteen years, until, in August 2004, a parole revocation warrant issued based on robbery charges brought against petitioner. On December 28, 2004, petitioner pled guilty to robbery and received a five-year sentence. On January 25, 2005, petitioner's parole for the UUMV conviction was officially revoked. Petitioner did not receive credit for any of the time he was on parole.

In November of 2005, petitioner filed his first state application for habeas corpus relief challenging the 2004 robbery conviction. The Texas Court of Criminal Appeals denied the application without written order on February 15, 2006. *Ex parte Hernandez*, WR-63,886-01. On April 3, 2006, petitioner filed his first federal application for habeas corpus relief in the above-numbered cause.[1]

In November 2006, petitioner filed another state application for habeas corpus relief, this time challenging the 1983 conviction. The Texas Court of Criminal Appeals dismissed this application in December 2006 for petitioner's failure to go through the Texas Department of Criminal Justice's (TDCJ's) time dispute resolution process. *Ex parte Hernandez*, WR-63,886-03. Petitioner then, on June 7, 2007, filed his second federal application for habeas corpus relief in cause number 2:08-CV-63.

Petitioner's second federal application essentially raised identical arguments as his first

---

[1] In May 2006, the Texas Court of Criminal appeals received petitioner's second state application for habeas corpus relief, again challenging the 2004 conviction. The Texas Court of Criminal Appeals dismissed the application as successive on July 19, 2006.

federal habeas corpus application, except that he based his first application on the 2004 conviction and based his second application on the 1983 conviction. For this reason, and, in part, based on respondent's motion, this Court consolidated the two cases into 2:06-CV-92. *See* FED. R. CIV. P. 42(a). On September 3, 2009, the Court conducted an evidentiary hearing on petitioner's claims.

While his federal cases were pending, petitioner filed a fourth habeas corpus application in the Texas Court of Criminal Appeals. In February 2008, that court remanded the case to the trial court for development of findings of fact. Copies of the state court records in that case have not been provided to the Court, but the written opinion denying the application issued by the Texas Court of Criminal Appeals in January 2009 has been reviewed. *See Ex parte Hernandez*, 275 S.W.3d 895 (Tex. Crim. App. 2009). The Court notes Hernandez has now completed his five-year sentence for the robbery conviction, but remains incarcerated on the twenty-five year, 1983 UUMV conviction.

## II.
## PETITIONER'S ALLEGATIONS

In his first habeas corpus petition, petitioner appears to contend he is being held in violation of the Constitution and laws of the United States for the following reasons:

1. He received ineffective assistance of counsel because his attorney on the 2004 robbery conviction never informed him that he would not received credit for the time he spent on parole ("street time") upon his guilty plea. Without such knowledge, petitioner contends, his plea was involuntary and unintelligently made.

2. Texas law creates a constitutional right for certain individuals to receive street-time credits. TDCJ's failure to properly classify petitioner as entitled to receive his street-time credit violates the Due Process Clause, the Equal Protection Clause, and his right against cruel and unusual punishment.

In his second habeas corpus petition, petitioner reasserted the claims he made in the second point of his first habeas corpus petition.

III.
PETITION'S TIMELINESS

In response to petitioner's first federal habeas corpus petition, respondent did not address whether the petition was timely filed. However, in response to petitioner's second federal habeas corpus petition, respondent contended the petition was not timely filed because petitioner knew or should have known when he was paroled in 1987 that he would not receive any street-time credit, as he signed documents indicating he understood such. Respondent contends petitioner should have filed his petition at that point if he took issue with not receiving street-time credits. However, respondent concedes the time period should at least start from the day of the parole revocation, which was January 25, 2005. ("Respondent Quarterman's Answer with Brief in Support, case 2:08-CV-63, Document 11).

On November 28, 2005 (307 days after the revocation hearing), petitioner's first state habeas corpus application was filed; it was denied without written order February 15, 2006. On April 3, 2006 (47 days later), petitioner filed the instant application. Petitioner's first federal habeas corpus application was timely.

Petitioner's second petition, which was not filed until June 7, 2007, was not timely. However, the untimely filed petition has been consolidated with the timely filed petition. Further, even if the second petition were considered untimely filed, all the allegations petitioner made in his second petition had already been raised in the first petition. Disregarding the issues raised in the second petition would have no impact on the Court's recommendations. Therefore, the Court considers the merits of all of petitioner's allegations.

IV.
MERITS OF PETITIONER'S ALLEGATIONS

*A. Ineffective Assistance of Counsel*

Petitioner's first argument is that he received ineffective assistance of counsel because his attorney failed to inform him that he would not receive any credit for his street time upon his guilty plea. An evidentiary hearing was set to consider this issue in addition to other issues. The hearing was held September 3, 2009, and at the hearing the attorney who represented petitioner in the 2004 conviction was present and ready to testify. Petitioner waived all of his ineffective assistance of counsel claims against the attorneys involved in both the 1983 and the 2004 convictions.[2] This issue having been waived by petitioner, the Court will address only the issue of whether the denial of street-time credits was unconstitutional.

*B. Petitioner's Right to Street-time Credits*

The focus of petitioner's argument is, and has always been, that he had a liberty interest in receiving his street-time credits and that such liberty interest has been violated. Prior to 2001, Texas inmates were not entitled to credit on their sentences for time spent on parole or mandatory supervision, and, thus, had no liberty interest in street-time credits. *Thompson v. Cockrell*, 263 F.3d 426, 426 (5th Cir. 2001). In 2001, however, the Texas Legislature amended section 508.283 of the Texas Government Code to provide that "certain parole violators will receive street-time credit." *Ex parte Spann*, 132 S.W.3d 390, 392 (Tex. Crim. App. 2004).

Based on this amendment, the Fifth Circuit has held that some Texas prisoners may have a

---

[2] Even had petitioner not waived this claim, he would have had a very difficult burden to overcome in demonstrating he received ineffective assistance of counsel for his attorney's failure to inform him of the collateral consequence of not receiving any street-time credit. *See Johnson v. Dees*, 581 F.2d 1166, 1167 (5th Cir. 1978).

constitutionally protected liberty interest in retaining street-time credits. *See Johnson v. Quarterman*, 304 Fed. Appx. 234, 236 (5th Cir. 2008). The amendment, however, created such a liberty interest (if at all) for only a select group of prisoners. Under the amended statute, a prisoner will receive street-time credit if he satisfies a two-pronged test: first he has to have "spent more time on release than he had left to serve," and, second, he must not be a person described by section 508.149(a) of the Texas Government Code. *See Ex parte Keller*, 173 S.W.3d 492, 495 (Tex. Crim. App. 2005); TEX. GOV'T CODE §§ 508.283, 508.149 (Vernon 2004, Vernon Supp. 2007).

There is no dispute petitioner Hernandez meets the first prong of this test, as he served several more years on parole than he had left to serve on the UUMV conviction. The critical issue is whether petitioner is a person described by section 508.149(a) of the Texas Government Code. The Texas Court of Criminal Appeals has explicitly determined that petitioner is such a person and therefore is not entitled to street-time credits. *See Ex parte Hernandez*, 275 S.W.3d at 898. Specifically, the court held petitioner Hernandez did not meet the second prong because at the time his parole was revoked (in January 2005), he was serving time for an offense (robbery) included in section 508.149 of the Texas Government Code. *Id.*

*1. Unreviewable Decisions*

It is well established that the interpretation of state law is a matter of state concern, and it is not the proper function of a federal habeas corpus court to review a state's interpretation of its own law. *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995); *Seaton v. Procunier*, 750 F.2d 366, 368 (5th Cir. 1985), *cert. denied*, 474 U.S. 836, 106 S. Ct. 110, 88 L. Ed. 2d 90 ("We will take the word of the highest court on criminal matters in Texas as to the interpretation of its law, and we do not sit to review that state's interpretation of its own law."). The Texas Court of Criminal Appeals has

decided how to apply the provisions of section 508.283 of the Texas Government Code to the petitioner, and no federal court has the authority to overturn that decision.

Petitioner contends the Court of Criminal Appeals's decision in *Hernandez* was incorrect, and that it contradicted previous case law, namely *Ex parte Keller*. Review of the *Keller* decision reveals the Texas Court of Criminal Appeals held street-time credits should be given to a defendant, who, much like petitioner, first committed a mandatory-supervision-eligible offense on which he was released on mandatory release and then committed a mandatory-supervision-ineligible offense. *Ex parte Keller*, 173 S.W.3d at 494-95.

*Keller* is distinguishable because Keller had fully discharged his sentence on the ineligible offense before parole revocation, so it never became his holding conviction. *Id*. at 493. Stated differently, Keller, unlike Hernandez, was not serving time for the ineligible offense when his parole was revoked, and Keller was entitled to his street-time credits. *Id.* at 498.

The Texas Court of Criminal Appeals further interpreted the relevant Texas provisions in *Noyola*. *Ex parte Noyola*, 215 S.W.3d 862, 867 (Tex. Crim. App. 2007). In that case, the court reiterated that the starting point in determining the applicability of section 508.283(c) is the law in effect "when the inmate's parole or mandatory supervision is *revoked*." *Id.*

In this case, at the time Hernandez's parole was *revoked*, he was serving a sentence for robbery, an offense listed in 508.149(a). Juggling all the technicalities created by Texas statutory and case law, it seems the Texas Court of Criminal Appeals reached a logical extension of its prior holdings when it decided against petitioner. Had petitioner discharged his robbery sentence prior to the time his parole was revoked, then, under *Keller*, he would have been entitled to his street-time credits. *Ex parte Keller*, 173 S.W.3d at 498. Likewise, now that petitioner has discharged the

robbery conviction, he may eventually qualify for release on mandatory supervision because he (1) is no longer serving a sentence for an ineligible offense and (2) the ineligible offense conviction was not "previous to" the UUMV offense, on which petitioner is now being held. *See id.* at 496. That fact does not help petitioner on his current claims, however.

Petitioner additionally contends that his rights were violated under Texas Government Code sections 508.281 and 508.282 because his revocation hearing was not conducted within forty-one days of the date the parole violation warrant issued. To the contrary, the code seems to indicate that petitioner was entitled to a hearing within forty-one days of the revocation warrant only if he committed an administrative violation of his parole or if he was in the sheriff's custody and discharged his sentence or the new charges were dismissed. *See* TEX. GOV'T CODE ANN. § 508.282(a)(1) (Vernon 2004). Petitioner has not demonstrated that he met any of these requirements. In any event, this is a state-law issue open only to state-court interpretation. The Texas Court of Criminal Appeals has determined that "the forty-one day deadline for giving [a defendant] his final parole revocation hearing under Texas Gov't Code Section 508.282(a)(1) does not apply" when the defendant who was arrested on parole revocation warrant had been indicted for a new offense. *Ex parte Cordova*, 235 S.W.3d 735, 736 (Tex. Crim. App. 2007).

Finally, even if petitioner is correct, and the Texas Court of Criminal Appeals did err and contradict its prior case law or has misread the Texas statute applying to parole revocation hearings, the Supreme Court has repeatedly held that "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S. Ct. 475, 480, 116 L. Ed. 2d 385 (1991). Thus, even if this Court were to agree whole-heartedly with all of petitioner's contentions, under existing precedent it lacks the authority to undermine the state's explicit determination of its own

laws against petitioner.

### 2. *No Violation of Constitutional Rights*

Apart from reviewing the state court's decision, and as far as federal constitutional law is concerned, petitioner does not have a right to street-time credits. Traditionally, because "Texas statutory law allows the Board of Pardons and Paroles to disregard the time a prisoner spends on mandatory supervision" when he violates the terms of his release, there is no constitutional right attached to street-time credits. *Thompson*, 263 F.3d at 426 (5th Cir. 2001) (citing TEX. GOV'T CODE ANN. § 508.283(b)). Thus a petitioner "does not have a liberty interest grounded in either a state law or the Due Process Clause itself that would require the Texas Department of Corrections to credit [his] accrued calender time with the time he appropriately spent on mandatory supervision." *Id.* This state law matched the federal law, which likewise denies a prisoner credit towards his calender time for time spent on parole if the prisoner violates the conditions of his release. *Id.* (citing *United States v. Newton*, 698 F.2d 770, 772 (5th Cir. 1983)).

The Texas Legislature amended the statute in 2001, however, and in doing so may have created a liberty interest in street-time credits for certain prisoners whose parole was revoked after September 1, 2001. *See Johnson*, 304 Fed. App. at 236; *Haltom v. Owens*, 294 Fed. Appx. 917, 918-19 (5th Cir. 2008); *Whitley v. Dretke*, 111 Fed. Appx. 222, 223 (5th Cir. 2004). If so, then the Fourteenth Amendment would entitle petitioner "to those minimum procedures appropriate under the circumstances and required by the due process clause to insure that [the] state-created right is not arbitrarily abrogated." *Malchi v. Thaler*, 211 F.3d 953, 959 (5th Cir. 2000); *see Teague v. Quarterman*, 482 F.3d 769, 774 (5th Cir. 2007) ("A state statutory scheme may . . . create a right to good-time credits; and when one does so and recognizes that revocation is an authorized sanction,

an inmate's interest in good-time credit is accorded due process protection.")

Evidence admitted at the evidentiary hearing conducted by this Court showed that the Board of Pardons and Paroles has a set procedure for handling parole revocations after the parolee has been charged with committing a new offense. While the evidence demonstrated a parolee is entirely at the parole officer's mercy as to whether he receives a preliminary hearing, no evidence was produced that petitioner did not (in January 2005) receive a full and fair parole revocation hearing. Because there is no evidence that petitioner was deprived of the minimum procedures required by the due process clause, petitioner cannot demonstrate a violation of his federal constitutional rights, even if we assume Texas statutory law created a liberty interest in receiving street-time credits.[3] *See id.*

The dissent in the decision in petitioner's case before the Texas Court of Criminal Appeals pointed out the danger of the apparent policy created by the court's holding—that it

> allows, even encourages, the Board of Pardons and Paroles . . . to engage in inappropriate gamesmanship—delay revocation of supervision for a[n] unlisted offense that meets the midpoint requirements of § 508.283(c) until there is a new conviction on a listed offense, then deny street-time credit because the inmate "is serving a sentence for" a listed offense.

*Ex parte Hernandez*, 275 S.W.3d at 900.

While the dissent raises a valid point, the undersigned is of the opinion that the timing in petitioner's case was not necessarily the result of gamesmanship but rather the result of a standard Board of Pardons and Paroles practice of waiting for final disposition of the new criminal charges

---

[3] Moreover, the Court notes that at the time Hernandez was paroled, in 1987, he unequvically had no right to street-time credits, as reflected by the Certificate of Parole he signed, which stated in all capital letters, "any violation of such conditions shall be sufficient cause for revocation of this parole, and . . . all time served on parole shall be forfeited." (Parole Revocation Packet, pg. 6). In fact, the law he now basis his claims upon, section 508.283 of the Texas Government Code, did not come into existence until ten years after petitioner was paroled. *See* Act of May 21, 1997, 75th Leg., R.S., ch. 165, § 508.283. It did not give parole violators the hope of receiving street-time credits until 2001. *See* Act of June 14, 2001, 77th Leg., R.S., ch. 856, § 508.283.

before revoking parole. Whether the results would have been the same if the people involved in the case realized the importance of timing in the sentencing and revocation process is an unanswered question, and unfortunately for petitioner Hernandez this may be a case where no one understood all of the collateral consequences of his robbery plea. Regardless, this is strictly a state law issue decided by the state courts. Petitioner has failed to demonstrate a violation of a federal constitutional right, and, for that reason, cannot succeed at this level.

## V.
## RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Petition for Writ of Habeas Corpus by a Person in State Custody filed by petitioner FRANK GARCIA HERNANDEZ, JR. be DENIED.

## VI.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 10th day of September, 2009.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## *** NOTICE OF RIGHT TO OBJECT ***

Any party may object to these proposed findings, conclusions and recommendation. In the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is eleven (11) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(B), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(D). When service is made by mail or electronic means, three (3) days are added after the prescribed period. Fed. R. Civ. P. 6(e). Therefore, any objections must be filed **on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).